UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA-CHRISTINA BIRRELL, aka DAVID WESLEY BIRRELL,[1] <br><br> Plaintiff, <br><br> v. <br><br> JOYCE BANZHAF, et al., <br><br> Defendants. | No. 2:14-cv-1024 DAD P <br><br> ORDER |

Plaintiff is a state prisoner, incarcerated at the California Medical Facility (CMF) in Vacaville, proceeding without counsel in this civil rights action. This proceeding was referred to this court by Local Rule 302, pursuant to 28 U.S.C. § 636(b)(1).

I. <u>Motion to Proceed In Forma Pauperis</u>

Plaintiff requests leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, and has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Therefore, plaintiff's request to proceed in forma pauperis (ECF No. 2) is granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

---

[1] Plaintiff is a Native American male-to-female transgender individual who prefers to be referred to using feminine pronouns.

1

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Motion to Proceed on First Amended Complaint

Plaintiff moves for leave to proceed on her First Amended Complaint (FAC), filed December 1, 2014. The FAC, unlike plaintiff's original complaint, provides the identity of "LB Doe," and is therefore more specific and complete. Rule 15, Federal Rules of Civil Procedure, authorizes leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Allowing plaintiff to proceed on her FAC will not prejudice any party because no defendants have been served in this case; justice is furthered by authorizing the requested amendment. Accordingly, plaintiff's motion (ECF No. 7) for leave to proceed on her FAC (ECF No. 8), is granted.

III. Motion to Shorten Discovery Response Time

Plaintiff next moves to shorten the period for replying to discovery requests from 45 days, as routinely accorded to prisoner cases in this court, to 30 days. Plaintiff avers that this requested shortening of time will expedite discovery and resolution of this action. However, plaintiff's motion is premature because discovery has not yet commenced in this action. For this reason, plaintiff's motion (ECF No. 5) is denied without prejudice.

IV. Screening of First Amended Complaint

The court next examines the factual allegations and legal claims set forth in plaintiff's FAC (ECF No. 8).

A. Legal Standards

This court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

1  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

2  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

3       A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

4  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

5  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

6  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

7  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

8  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

9  Cir. 1989); Franklin, 745 F.2d at 1227.

10       A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

11  which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

12  support of the claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467

13  U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt

14  Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under

15  this standard, the court must accept as true the allegations of the complaint in question, Hospital

16  Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light

17  most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v.

18  McKeithen, 395 U.S. 411, 421 (1969).

19      B.  Allegations and Claims

20       In her FAC, plaintiff initially recounts the history of the volunteer Alternatives to

21  Violence Project (AVP) provided at CMF.  In this regard, plaintiff alleges as follows.  The AVP

22  is a nationwide voluntary self-help program for prisoners operated by volunteers from outside the

23  prisons and/or inmates who have previously participated in the program.  See e.g., Bader v. Wren,

24  532 F. Supp. 2d 308, 309-11 (D.N.H. 2008).  According to the FAC, the AVP program

25  commenced at CMF in July 2007.  However, allegedly "from the very start of the AVP program

26  at CMF, the program has been, and currently still is, corrupted by a number of self-serving,

27  'prima donna' inmates who have hijacked the AVP program, with the approval and cooperation

28  of the named AVP Coordinators, and who still control who can attend the monthly workshops."

(ECF No. 8 at 10.)  Plaintiff refers to the group of inmates who allegedly control CMF's AVP as the "Inmate Empire," which she defines as "a special group of inmates who . . . fashioned themselves to be the self-appointed leadership controlling the AVP program." (Id. at 9.)  Rather than honor the policy that CMF inmates participate in the AVP program on a "first-come, first-served" basis, the Inmate Empire allegedly chooses participants whom they favor.  In February 2010, "plaintiff, along with a number of other inmates, veterans of the United States armed forces, joined together with a number of other concerning CMF inmates, and filed a Group/Class Action Inmate Administrative Appeal." (Id.)  As a result of this inmate appeal and a related investigation, the AVP program was suspended at CMF for approximately two years with specific findings and guidelines for its recommencement.  (See id. at 12-3.)

The AVP program recommenced at CMF in the Fall of 2012.  However, plaintiff alleges that she and other inmates who had pursued the group appeal were "publicly despised, disparaged, harassed and ridiculed as a result of the defendants' wrongful dissemination of the confidential information contained" in the group appeal, and excluded from participation in the recommenced AVP program. (Id. at 15.)  In December 2012, a list of new participants was posted, but excluded inmate Deegan, who had participated in the group appeal and had waited since 2008 to train as a facilitator.  According to the FAC, plaintiff spoke with Landon Bravo, the CMF Community Partnership Manager, on January 3, 2013, and asked why Deegan had been omitted, and why the AVP program was not adhering to the new guidelines.  Bravo referred plaintiff to defendant Joyce Banzhaf, the AVP Supervising Team Leader-in Charge, and suggested plaintiff talk with Banzhaf when she arrived at the CMF U-Wing Medical Clinic the following day at 1500 hours.  Plaintiff states that he was unable to go to the clinic until 1710 hours on January 4, 2013, but was then informed by defendant Kary Shender, the AVP Coordinator and Facilitator, that Banzhaf wasn't present.  When asked by Shender what she wanted to discuss with Banzhaf, plaintiff "simply replied that she just wanted to do a follow-up on some of the issues that had been decided in the previous Administrative Appeal," and then left the Clinic. (Id. at 18.)  Plaintiff later learned that Deegan was allowed to participate in the AVP program following his own conversation with defendant Shender. ((Id.).)

4

Several months later, on April 19, 2013, plaintiff discovered, during an <u>Olsen</u> review of her central file, that a CDCR-128-B General Chrono, dated January 29, 2013, was placed in her file by defendant Banzhaf. The chrono provided in full (ECF No. 8 at 51-2):

> On Friday, January 4, 2013 at approximately 1530 hours Inmate Birrel (sic) came into the U Wing Clinic where an Alternatives to Violence Project Workshop was to begin at 1730 hours. He spoke with Kary Shender, an outside AVP facilitator, seemingly in hopes of getting Sid Deegan put on the list of participants because two of the ducated participants were not coming. Birrell told Kary I want this to be resolved amicably or it could go the way it went the other time. They were then interrupted when someone came in and needed Kary's attention.

Plaintiff administratively challenged the chrono, alleging that it was false, on the ground that plaintiff never made the alleged statement or otherwise threatened Shender, and because plaintiff was not present at the U Wing Clinic at the relevant time. Plaintiff alleged initially that the chrono was falsely authored by Landon Bravo under the identity of Banzhaf, but now explains in the FAC that she later discovered the chrono was written by defendant Darren Sewell, an AVP Facilitator "tasked with performing all secretarial duties of the organization." <u>Id.</u> at 5. In her administrative appeal, plaintiff also alleged that she never received a copy of the chrono, as required by departmental policy. (ECF No. 8 at 49.) In seeking Third Level Review of her inmate appeal, plaintiff further alleged that the chrono was "written as unlawful retaliation against [plaintiff] for the previous use of the CDCR 602 Appeal System." At the conclusion of administrative review, plaintiff's grievance was denied and the subject chrono remained in plaintiff's central file.

In her FAC plaintiff names three defendants, Banzhaf, Shender and Sewell as well as Does 2 through 25, and attempts to state three causes of action. The First and Second Causes of Action are purportedly premised on "§ I of the Ku Klux Klan Act of 1871," and assert, respectively, a retaliation claim in violation of the First Amendment, and due process and equal protection claims in violation of the Fourteenth Amendment. The Third Cause of Action alleges a conspiracy in violation of 42 U.S.C. § 1985. In addition, plaintiff avers that she timely submitted a tort claim with the California Victims' Compensation and Government Claims Board, which was denied, thus satisfying the claims presentation requirement for alleging a state law

1 claim. Despite, this allegation, however, plaintiff does not identify or assert a state law claim in
2 the FAC.

3 Plaintiff seeks the following relief: compensatory and punitive damages; a finding by the
4 court that the subject chrono is "false and untrue" and an order requiring its removal from
5 plaintiff's central file; an injunction ordering defendants to comply with the group appeal decision
6 (Log No. CMF-M-10-00361); an injunction ordering defendants to comply with "all applicable
7 federal and state laws" (emphasis deleted); an injunction restraining defendants "from engaging
8 in any acts of malicious and/or vindictive conduct or retaliatory acts or omissions against
9 plaintiff, or any other individual involved" with the group appeal; and a finding that defendants'
10 "acts and omissions . . . were willful, deliberate, intentional, malicious, wanton, in fraudem legis
11 (sic), uncivilized, un-Christian like, and simply just plain old mean and nasty. . . ." (Id. at 29-31.)

### C. Analysis

Plaintiff's reliance on § I of the Ku Klux Klan Act of 1871 is misplaced. This action is properly brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Although "§1983 has its roots in §1 of the Ku Klux Klan Act of 1871, Act of Apr. 20, 1871, §1, 17 Stat. 13," District of Columbia v. Carter, 409 U.S. 418, 423 (1973), the latter is not the appropriate vehicle for bringing a contemporary prisoner civil rights claim. Although the court could liberally construe plaintiff's claims to be made under § 1983, additional deficiencies require dismissal of the FAC with leave to amend.

To state a claim under § 1983, a plaintiff must allege a violation of her constitutional rights by a defendant whose actions were taken under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001). That a defendant act under color of state law is "'a jurisdictional requisite for a §1983 action.'" Gritchen, 254 F.3d at 812 (quoting West, 487 U.S. at 46). Thus, a plaintiff claiming constitutional violations must allege facts showing that the "actions complained of are 'fairly attributable' to the government." Morse v. North Coast Opportunities, Inc., 118 F.3d 1338, 1340 (9th Cir. 1997). Here, plaintiff's FAC alleges that all of the named defendants participated as volunteers with the CMF AVP, and that none were state employees. Plaintiff specifically alleges that defendants Banzhaf and

Shender acted as a "non-paid Volunteer/Agent[s] of the CDCR . . . ." (ECF No. 8 at 3-5), and that defendant Sewell, who was "employed by the Volunteers of Vacaville, as the Coordinator of Services to the Visually Impaired," served as a AVP Facilitator and Secretary, with the alleged authority to write CDCR chronos and place them in prisoners' central files. (Id. at 5-6.) Although the FAC acknowledges the volunteer status of each named defendant and asserts that they each acted as an agent of the state, plaintiff has inadequately pled precisely how the challenged conduct of each defendant was taken under color of state law within the meaning of § 1983.

The Ninth Circuit has set forth the following standards for assessing state action under § 1983:

> The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" Rendell–Baker v. Kohn, 457 U.S. 830, 838 (1982) (citation and internal quotation marks omitted); see also Kitchens v. Bowen, 825 F.2d 1337, 1340 (9th Cir. 1987) ("[T]he standards utilized to find federal action ... are identical to those employed to detect state action.") (citation and internal quotation marks omitted). As this court has recognized in Collins v. Womancare, 878 F.2d 1145, 1151 (9th Cir.1989), the Supreme Court has adopted a two-part test for answering that question.
>
> First, the deprivation must result from a governmental policy. See id. In other words, the deprivation "must be caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government]." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). Neither party disputes that the IRC and INS requirements that employers obtain their employees' social security numbers satisfy this criterion. Both are rules of conduct imposed by the federal government that caused Plaintiff's deprivation.
>
> Second, "the party charged with the deprivation must be a person who may fairly be said to be a [governmental] actor." Id. The Court adopted that test because "§1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999) (citation and internal quotation marks omitted). Indeed, "[w]ithout a limit such as this, private parties could face ... litigation whenever they seek to rely on some ... rule governing their interactions with the community surrounding them." Lugar, 457 U.S. at 937.
>
> When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does

7

> not constitute governmental action. See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law."). In order for private conduct to constitute governmental action, "something more" must be present. See Lugar, 457 U.S. at 939 ("Action by a private party pursuant to this statute, without something more, was not sufficient to justify a characterization of that party as a 'state actor.' "). Courts have used four different factors or tests to identify what constitutes "something more": (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus. See id.; Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir.), cert. denied, 522 U.S. 996 (1997); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir. 1995); Gorenc v. Salt River Project Agric. Improvement and Power Dist., 869 F.2d 503, 506 (9th Cir. 1989).
>
> "While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action." Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) (citation and internal quotation marks omitted); see also Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961) ("[T]o fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an impossible task which [t]his Court has never attempted.") (citation and internal quotation marks omitted); Lugar, 457 U.S. at 939 ("The Court suggested that that 'something more' which would convert the private party into a state actor might vary with the circumstances of the case."); Ouzts v. Maryland Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974) ("It is also a truism by now that there is no rigid formula for measuring state action for purposes of section 1983 liability."). Instead, "[c]ontemporary decisions stress the necessity of a close nexus between the state and the challenged conduct rather than application of a mechanistic formula." Wagner v. Metropolitan Nashville Airport Auth., 772 F.2d 227, 229 (6th Cir. 1985) (emphasis added); see also Grijalva v. Shalala, 152 F.3d 1115, 1119 (9th Cir. 1998) ("In order to show that a private action is in fact state action, the plaintiff must show that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.") (citation and internal quotation marks omitted), vacated on other grounds by 526 U.S. 1096 (1999). "Under any formula, however, the inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case." Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999). "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton, 365 U.S. at 722; see also Howerton, 708 F.2d at 383 (stating the same principle).

Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835-36 (9th Cir. 1999). Here, the FAC is deficient in its allegations with respect to state action.

In addition, in the FAC, plaintiff fails to allege a direct link between the challenged conduct of each of the named defendants and plaintiff's alleged constitutional deprivations. It is not enough for plaintiff to allege that a defendant engaged in wrongdoing – plaintiff must specifically allege how that purported wrongdoing violated plaintiff's identified constitutional rights. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). See also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.") There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a specific defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.

Despite the noted deficiencies, plaintiff will be accorded the opportunity to file a Second Amended Complaint that clearly alleges, in legal claims framed under 42 U.S.C. § 1983, specifically how each defendant, acting under color of state law, violated plaintiff's identified constitutional rights.

Plaintiff is provided the following guidance in restating her cause of actions in a Second Amended Complaint. Plaintiff's first cause of action contains most of the elements for stating a prima facie retaliation claim under the First Amendment, specifically, that defendants allegedly excluded plaintiff from full participation in CMF's AVP and/or that defendants authorized, prepared and submitted a false General Chrono against plaintiff, in retaliation for plaintiff's past participation in the subject group appeal, and that plaintiff was thereby deterred from using the prison grievance process. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

/////

1    In contrast, plaintiff's second cause of action fails to state either a due process or equal
2 protection claim under the Fourteenth Amendment. "The Fourteenth Amendment's Due Process
3 Clause protects persons against deprivations of life, liberty, or property; and those who seek to
4 invoke its procedural protection must establish that one of these interests is at stake." Wilkinson
5 v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not allege in the FAC a deprivation of life,
6 liberty or property. Similarly, plaintiff does not allege how she was treated differently than other
7 inmates. "The Equal Protection Clause of the Fourteenth Amendment commands that no State
8 shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is
9 essentially a direction that all persons similarly situated should be treated alike." City of
10 Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). As a general rule, official action
11 will be sustained if the classification is rationally related to a legitimate state interest; however,
12 classifications by race, alienage, or national origin will be sustained only if they are "suitably
13 tailored to serve a compelling state interest." Id. at 440. In the FAC plaintiff identifies no suspect
14 classification warranting consideration under the Equal Protection Clause. Although plaintiff
15 stated, in her administrative grievance, that the AVP leadership harassed transgender women
16 inmates (ECF No. 8 at 35-41), which would be a constitutionally suspect classification, plaintiff
17 does not renew this allegation in her FAC nor does she allege that her own status as a transgender
18 woman was a motivating factor in defendants' alleged misconduct. Nor does plaintiff allege that
19 her Native American heritage is relevant to any such claims.

20    Plaintiff's third cause of action alleges a conspiracy among defendants in violation of 42
21 U.S.C. § 1985, most favorably construed as a conspiracy to retaliate against plaintiff. (See FAC,
22 ECF No. 8 at 27-8.) However, to state a cognizable claim under § 1985 for conspiracy to
23 interfere with civil rights, plaintiff must include an allegation of invidious discrimination. Usher
24 v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) ("To establish racial or class-based
25 animus, a plaintiff must show 'invidiously discriminatory motivation . . . behind the conspirators'
26 action.'") (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Furthermore, claims
27 brought under § 1985 must be supported by allegation of specific facts. Karim–Panahi v. Los
28 Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988) ("A claim under this section must allege

1. facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient .")  Therefore, plaintiff's third cause of action does not state a cognizable claim as framed in the FAC.

Finally, plaintiff is advised that the use of "Doe" defendants is not favored in the Ninth Circuit.  See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored.").  Therefore, plaintiff's claims against "Does 2 through 25" must be dismissed without prejudice.  Plaintiff should not name Doe defendants in any Second Amended Complaint she may elect to file.  However, as with the filing of the FAC, if plaintiff discovers the identity of other defendants through discovery or otherwise, she may be granted leave to further amend the operative complaint at that time.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

Should plaintiff continue to pursue this action by filing a Second Amended Complaint, she shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  Any Second Amended Complaint must bear the docket number assigned to this case and be labeled "Second Amended Complaint."  The Second Amended Complaint must be complete in itself without reference to any prior pleading, because it will supersede the FAC.  See Local Rule 220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Therefore, in a Second Amended Complaint, each legal claim and the alleged involvement of each defendant must be sufficiently alleged.

V. Conclusion

Accordingly for the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motion for leave to proceed on her FAC (ECF No. 7) is granted.

4. Plaintiff's motion to shorten discovery response time (ECF No. 5) is denied without prejudice.

5. Plaintiff's complaint is dismissed.

6. Plaintiff is granted thirty days from the filing date of this order to file a Second Amended Complaint that conforms with this order and complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the Second Amended Complaint must bear the docket number assigned this case and be labeled "Second Amended Complaint."

7. Failure of plaintiff to timely comply with this order will result in a recommendation that this action be dismissed.

Dated: December 9, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
birr1024.14new