1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BELLA-CHRISTINA BIRRELL,                  No.  2:14-cv-01024 JAM DB

12                   Plaintiff,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   JOYCE BANZHAF, et al.,

15                   Defendants.

16

17        Plaintiff, Bella-Christina Birrell, is a state prisoner proceeding pro se and in forma

18   pauperis with a complaint under 42 U.S.C. § 1983.  Therein, Birrell asserts federal claims under

19   the First and Fourteenth Amendments, as well as state claims for defamation and negligence.  The

20   gravamen of Birrell's claims is that defendants violated her rights by falsifying a report about her

21   and excluding her from certain activities because of her gender.

22        Defendant Landon Bravo moves to dismiss Birrell's due process and defamation claims

23   on various grounds, including that the report was not disciplinary in nature.  The undersigned

24   finds that Birrell has failed to state a cognizable claim that Bravo violated her due process rights.

25   Further, the undersigned finds that Birrell has stated a cognizable claim that Bravo defamed her.

26   Accordingly, for the following reasons, the undersigned recommends that the motion to dismiss

27   be granted in part and denied in part.

28   ////

                                               1

1    **I.       BACKGROUND**

2         **A.       Factual Allegations**

3              Birrell is an inmate at the California Medical Facility ("CMF"), a medical/correctional

4    facility located in Vacaville, California.  (Sec. Am. Compl. ¶ 3, at 2–3 (ECF No. 14).)  Defendant

5    Bravo was employed at CMF as a "Community Resource Manager."  (Id. ¶ 12, at 6.)  Bravo

6    authorized defendant Joyce Banzhaf to serve as "Lead Coordinator" of the "Alternatives to

7    Violence Project."  (Id. ¶ 7, at 4.)  The Alternatives to Violence Project ("the program") "is an

8    independ[e]nt, non-profit organization providing workshops on preventing violence among

9    inmates within the California Department of Corrections and Rehabilitation ['CDCR'] . . . ."  (Id.)

10             In 2007, the program began holding workshops at CMF "to teach inmates of the CDCR

11   alternative, peaceful ways of dealing with disputes . . . ."  (Id. ¶ 35, at 16.)  In February 2010,

12   believing that "favoritism was being employed in the selection of inmates who were being chosen

13   to participate in the workshops," Birrell and other inmates "filed a Group/Class Action Inmate

14   Administrative Appeal ['group appeal']."  (Id.)  In March 2010, the warden partially granted the

15   appeal based on the determination that the "procedures for monitoring the selection of inmate

16   participants and facilitators within the . . . [p]rogram were flawed."  (Id. at 63.)  In response, new

17   procedures "were created to better monitor the . . . [p]rogram and the selection of inmates as

18   participants and facilitators."  (Id.)  Some months later, due to continuing problems with the

19   administration of the program, Banzhaf and another coordinator were removed from CMF and

20   barred from operating the program "until they would agree to follow all of the applicable CDCR

21   rules, regulations and policies."  (Id. ¶ 45, at 21.)

22             In the spring of 2012, the program returned to CMF "in an attempt to restart . . . without

23   all of the . . . corruption that had caused its shut-down in 2010."  (Id. ¶ 46, at 21.)  During this

24   period, Birrell and many of the inmates who had pursued the group appeal were being harassed

25   and mistreated as a result of the "wrongful dissemination of the [allegedly] confidential

26   information contained in said appeal."  (Id. ¶ 50, at 22–23.)  The same inmates were also "being

27   deliberately excluded from participation in the new . . . program that was being re-started at CMF

28   ////

2

1  . . . ." (Id. ¶ 50, at 23.)  In Birrell's words, this "covert punishment [was] being inflicted on the

2  [a]ppellants for engaging in a [c]onstitutionally protected activity."  (Id.)

3        Around that time, Birrell attended a workshop for facilitators of the program.  (Id. ¶ 53, at

4  23.)  Jose Sandoval participated in this workshop.  (Id. ¶ 54, at 23–24.)  Sandoval was an inmate

5  who worked for "Volunteers of Vacaville" and "performed clerical duties for the . . . program."

6  (Id. ¶¶ 24, 83, at 12, 32.)  Sandoval "announced to the entire group in attendance" that Bravo had

7  authorized him to "write CDCR 128 [General] Chronos" on Bravo's behalf.  (Id. ¶ 54, at 24.)

8  "General Chrono [i.e., chronological report] means a CDC[R] Form 128-B . . . which is used to

9  document information about inmates and inmate behavior."  Cal. Code Regs. tit. 15, § 3000; see

10  also Perrotte v. Sullivan, No. 1:08-cv-01804-AWI-JLT HC, 2010 WL 476006, at *2 (E.D. Cal.

11  Feb. 4, 2010), report and recommendation adopted, No. 1:08-cv-01804-AWI-JLT HC (Mar. 17,

12  2010).

13        In December 2012, Sandoval posted in CMF's housing units a list of inmates chosen to

14  participate in a new workshop.  (Sec. Am. Compl. ¶ 59, at 25 (ECF No. 14).)  However, Sandoval

15  did not post the list in "Unit IV," where Birrell "and most of the inmates who had signed the

16  [group] . . . [a]ppeal lived."  (Id.)

17        In January 2013, Birrell asked Bravo why "inmates who had signed the appeal in 2010[]

18  were being excluded and passed over from attending the . . . workshops."  (Id. ¶ 61, at 25–26.)

19  Bravo informed Birrell that he no longer ran the program and had delegated control of it to

20  unspecified individuals.  (Id. ¶ 63, at 26.)

21        In April 2013, Birrell discovered a general chrono ("first chrono") purporting to be

22  electronically signed by "Joyce Banzhaf, Outside [program] Coordinator for CMF."  (Id. at 69.)

23  The first chrono also bore the handwritten, printed initials "LB."  (Id.)  According to the first

24  chrono, Birrell went to a workshop on January 4, 2013 and tried to convince a facilitator to put

25  Sidney Ross Deegan, Jr., an inmate and co-signer of the 2010 group appeal, on the list of

26  participants.  (See id.; see also id. ¶ 60, at 25.)  The first chrono further stated that "Birrell told

27  [the facilitator] I want this to be resolved amicably or it could go the way it went the other time."

28  (Id. at 70.)  Birrell alleges that the first chrono "was a false . . . document containing a concocted,

1    false allegation that . . . [she] . . . made a 'veiled' threat" to the facilitator.  (Id. ¶ 67, at 27.)

2    Immediately thereafter, Birrell filed an inmate appeal based on her belief that an inmate wrote the

3    first chrono or that "Bravo had written [it] for some . . . nefarious purpose since the information

4    contained in [it] was untrue."  (Id. ¶ 71, at 29.)  However, during an administrative investigation,

5    Bravo denied knowledge of the first chrono.  (Id. at 65; see also id. ¶ 72, at 29.)

6         On July 16, 2013, Banzhaf faxed CDCR staff a copy of the first chrono ("second

7    chrono").  (Id. ¶ 74, at 30; see also id. at 76.)  Although the second chrono's narrative was the

8    same as that of the first, the second purported to contain the handwritten signature of Banzhaf.

9    (Id. at 70; see also id. ¶ 75, at 30.)

10        The following day, the associate warden issued a first-level appeal response.  (Id. at 74.)

11   Although the associate warden granted Birrell's request for "no retaliation," he denied her request

12   for removal of the chrono from her central file "due to the chrono being informational in nature."

13   (Id.)  A week later, the warden issued a second-level appeal response.  (Id. at 75.)  The warden

14   likewise denied Birrell's request for removal of the chrono, reasoning that it was "informational"

15   and not "disciplinary."  (Id. at 76.)

16        On August 21, 2013, Birrell went before the parole board.  (Id. ¶81, at 32.)  The district

17   attorney allegedly cited the falsified chrono in stating that Birrell "was manipulating staff and

18   making indirect threats."  (Id. ¶ 81, at 32.)  According to Birrell, this action resulted in Birrell

19   "receiving a five (5) year denial after serving some thirty-plus (30+) years without any

20   disciplinary write-ups."  (Id.)  Birrell also alleges that the false chrono "would forever follow

21   [her] and be later used by the parole board to deny [her] a future parole date."  (Id. ¶ 97, at 37.)

22        During the pendency of Birrell's third-level appeal,  she discovered that program

23   documents "were being kept . . . at the Volunteers of Vacaville, and were under the direct control

24   of the very same group of [inmates] that had been prohibited from having any access to said . . .

25   records based on the appeal decision of 2010."  (Id. ¶ 80, at 31–32.)  Based on this discovery,

26   Birrell told Bravo in November 2014 that inmates had written the chrono, forged his initials on it,

27   and placed it into her central file.  (Id. ¶ 82, at 32.)  According to Birrell, Bravo then admitted that

28   Sandoval wrote the chrono.  (Id. ¶ 83, at 32.)

On October 1, 2013, the hearing examiner issued a third-level decision denying Birrell's appeal.  (Id. at 77.)  The hearing examiner reasoned that Birrell failed to show that the underlying incident was untrue and that CDCR regulations provided that the chrono was the appropriate document for recording the incident.  (See id.)

### B.    Procedural Background

On April 25, 2014, Birrell filed a complaint under § 1983, (Compl. (ECF No. 1)), which she amended twice, (Am. Compl. (ECF No. 8); Sec. Am. Compl. (ECF No. 14)).  In her second amended complaint, Birrell sued multiple defendants and asserted multiple causes of action, including federal claims for violations of the First and Fourteenth Amendments, as well as state-law claims for defamation and negligence.  (See Sec. Am. Compl. ¶¶ 93–137, at 35–48 (ECF No. 14).)

On March 25, 2016, Judge Mendez issued an order, (ECF No. 20), adopting the findings and recommendations that Judge Delaney issued on January 19, 2016, (ECF No. 18).  In her findings and recommendations, Judge Delaney found that Birrell "stated federal civil rights claims of (1) retaliation, (2) violation of due process and (3) violation of plaintiff's right to equal protection only as to defendants Banzhaf and Bravo."  (ECF No. 18 at 3.)  Judge Delaney further found that Birrell "stated state law claims of defamation and negligence against defendants Banzhaf and Bravo[.]"  (Id.)  Additionally, Judge Delaney found that all other defendants and causes of actions should be dismissed.  (Id.)

On June 27, 2016, Bravo filed a motion to dismiss.  (Mot. Dismiss (ECF No. 28).)  Here, Bravo argues that Birrell failed to state a cognizable due process claim based on the allegedly false chrono.  (Mem. Support Mot. Dismiss (ECF No. 28-1, at 3.)  Bravo asserts that Birrell "cannot demonstrate that she has a liberty interest in parole premised solely on the alleged inaccuracy or falsification of a prison record."  (Id. at 4.)  Bravo also contends that Birrell failed to plead a claim for defamation, asserting that Birrell's "allegations fall short of the necessary showing of falsity."  (Id. at 5.)  To bolster this contention, Bravo asserts that Birrell based her defamation claim on Bravo's alleged dissemination of the contents of the group appeal, and

1  maintains that Birrell failed to show that the appeal's contents were false or taken out of context.[1]

2  (See id.)

3      On September 30, 2016, Birrell filed an opposition to Bravo's motion to dismiss and

4  motion for sanctions.  (Opp'n Mot. Dismiss & Mot. Sanctions (ECF No. 36).)  In her opposition,

5  Birrell largely accuses Bravo of mischaracterizing her allegations to make them easier to refute.

6  (See generally id.)  Birrell also suggests that Bravo's arguments fail because the court has already

7  "screened [her] Second Amended Complaint and found it to be more than sufficient."  (Id. at 5.)

8  Similarly, in her motion for sanctions, Birrell asserts that Bravo's motion to dismiss misquotes

9  and takes out of context allegations in the second amended complaint "simply to obtain an

10  advantage at the start of this case."  (Id. at 14.)  In Birrell's assessment, this tactic is particularly

11  frivolous because this "Court has screened and reviewed [her] Second Amended Complaint and

12  approved it as written."  (Id. at 21.)

13      On October 5, 2016, Bravo filed an opposition to Birrell's motion for sanctions.  (Opp'n

14  Mot. Sanctions (ECF No. 38).)  Bravo contends that the court should deny the motion for

15  sanctions because it "fails to comply with the safe-harbor provision under Rule 11."  (Id. at 1.)

16  Alternatively, Bravo maintains that the Birrell premises her motion "on a disagreement over the

17  pleadings" and that, consequently, she cannot show "bad faith."  (Id. at 2 (citation omitted).)

18      Birrell replied to Bravo's opposition to her motion for sanctions on October 12, 2016.

19  (Reply Opp'n Mot. Sanctions (ECF No. 39).)  Birrell attempts to comply with Rule 11's safe

20  harbor provision retroactively by stating that she finds the motion to dismiss "totally false[] and

21  deliberately misleading" and inviting Bravo to contact her to resolve her concerns.  (See id.)

22  Birrell also states that she will "prepare to seek sanctions against [Bravo]" if she does not hear

23  from him "in the very near future."  (Id.)

24  ////

25  ////

26  _____

[1] Birrell actually bases her defamation claim on the false chrono, not Bravo's alleged dissemination of the contents of

27  the group appeal.  (See Sec. Am. Compl. ¶¶ 94–95, 97, at 36–37 (ECF No. 14).)  Birrell makes this clear in her
opposition.  (See Opp'n Mot. Dismiss at 12–14 (ECF No. 36); see also Pegram v. Herdrich, 530 U.S. 211, 230 &

28  n.10 (2000) (stating that courts may consult parties' legal memoranda to clarify the meaning of ambiguous
complaints).)

1  Defendant Banzhaf, who is proceeding pro se, answered and moved to dismiss on

2  December 23, 2016.  (ECF No. 42.)  Birrell's response to Banzhaf's motion to dismiss is not yet

3  due, and Birrell has yet to respond.  (See ECF Nos. 43–44.)

4  **II.    STANDARD OF REVIEW**

5  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for

6  "failure to state a claim upon which relief can be granted."  In considering a motion to dismiss

7  pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in

8  question, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted), and construe the

9  pleading in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

10  (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive

11  dismissal for failure to state a claim, a pro se complaint must contain more than "naked

12  assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of

13  action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

14  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

15  statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

16  upon which the court can grant relief must have facial plausibility.  See Twombly, 550 U.S. at

17  570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

18  to draw the reasonable inference that the defendant is liable for the misconduct alleged."

19  Iqbal, 556 U.S. at 678.

20  In general, pro se pleadings are held to a less stringent standard than those drafted by

21  lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  The court has an obligation to

22  construe such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en

23  banc).  However, the court's liberal interpretation of a pro se complaint may not supply essential

24  elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

25  266, 268 (9th Cir. 1982). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court

26  "may generally consider only allegations contained in the pleadings, exhibits attached to the

27  complaint, and matters properly subject to judicial notice."  Outdoor Media Grp., Inc. v. City of

28  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation omitted).

1   **III.    LEGAL ANALYSIS**

2        **A.    Preliminary Matters**

3        Birrell suggests that it would be improper for the court to consider Bravo's motion to

4   dismiss seeing that Judge Mendez determined in his screening order that Birrell stated cognizable

5   federal and state claims.  While the Ninth Circuit does not appear to have addressed the question,

6   judges in the Eastern District of California have repeatedly held that "the screening and dismissal

7   procedure under [28 U.S.C.] § 1915A 'is cumulative of, not a substitute for, any subsequent Rule

8   12(b)(6) motion that the defendant may choose to bring[.]'"  James v. Perez, No. 2:08-CV-01857-

9   RRC, 2012 WL 5387676, at *2 (E.D. Cal. Nov. 1, 2012) (quoting Teahan v. Wilhelm, 481 F.

10  Supp. 2d 1115, 1119 (S.D. Cal. 2007)).  Accordingly, the undersigned will assess the merits of

11  Bravo's motion to dismiss.

12       **B.    Motion to Dismiss**

13       As noted, Judge Mendez held that Birrell stated federal civil rights claims for (1)

14  retaliation, (2) violation of due process, and (3) violation of equal protection.  Regarding the

15  federal claims, Bravo moves to dismiss only Birrell's due process claim, which will be addressed

16  first.  Judge Mendez also held that Birrell stated cognizable state-law claims for defamation and

17  negligence.  As Bravo has not moved to dismiss the negligence claim, the undersigned considers

18  only the defamation claim, which will be addressed second.

19              1.    Due Process

20       "Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain

21  due process protections when he is charged with a disciplinary violation."  Serrano v. Francis,

22  345 F.3d 1071, 1077 (9th Cir. 2003) (citing Wolff v. McDonnell, 418 U.S. 539, 564–571 (1974)).

23  "Such protections include the rights to call witnesses, to present documentary evidence and to

24  have a written statement by the factfinder as to the evidence relied upon and the reasons for the

25  disciplinary action taken."  Id. at 1077–78.  Ordinarily, however, these procedural protections

26  apply only when the disciplinary action "imposes an 'atypical and significant hardship on the

27  inmate in relation to the ordinary incidents of prison life.'"  See id. at 1078 (quoting Sandin v.

28  Connor, 515 U.S. 472, 484 (1995)).  "There is no single standard for determining whether a

1   prison hardship is atypical and significant, and the condition or combination of conditions or

2   factors . . . requires case by case . . . consideration." Ramirez v. Galaza, 334 F.3d 850, 861 (9th

3   Cir. 2003) (first alteration in original) (citation omitted).

4          Here, Birrell has failed to adequately allege that the chrono imposed a hardship that was

5   atypical and significant.  While Birrell's allegations arguably support the inference that it was

6   atypical for inmates to receive falsified chronos, she has inadequately alleged that the chrono

7   subjected her to a significant hardship. Additionally,  Birrell has not adequately alleged that the

8   chrono was disciplinary, and California law does not regard general chronos as such.  Perrotte,

9   2010 WL 476006, at *3; (see also Sec. Am. Compl. at 69–70, 76–77, 80 (ECF No. 14).)  Birrell

10  has not alleged that she was segregated, docked good-time credit, or otherwise penalized due to

11  the chrono.

12         Therefore, the interest that she would have sought to vindicate through a hearing—

13  clearing her name—is insubstantial.  See Wolff, 418 U.S. at 557 (citation omitted) ("[T]he Due

14  Process Clause does not require a hearing in every conceivable case of government impairment of

15  [a] private interest."); Harper v. Costa, 393 F. App'x 488, 489 (9th Cir. 2010) (unpublished

16  memorandum) (affirming district court's dismissal of inmate's due process claim, partly because

17  "his disciplinary violation, and the associated penalties, were reversed through the prison's

18  administrative appeal procedure"); Espinoza v. Benoit, 108 F. App'x 869, 871 (5th Cir. 2004)

19  ("Because [the inmate's] good-time credits have been restored, he has not identified the loss of a

20  protected liberty interest.").

21         In short, Birrell cannot state a cognizable due process claim based solely on the allegation

22  that prison officials falsely accused her of misconduct.  See Dunaway v. Cal. Dep't of Corr. &

23  Rehab., No. 1:14-CV-1718-BAM, 2015 WL 3992554, at *5 (E.D. Cal. June 30, 2015) (citing

24  cases) ("A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly

25  accused.").

26         Granted, Birrell alleges that the district attorney used the falsified chrono to her detriment

27  at a parole hearing.  This action, in Birrell's words, resulted in her "receiving a five (5) year

28  denial."  (Sec. Am. Compl. ¶ 81, at 32 (ECF No. 14).)  But the unadorned allegation that the

1    board denied plaintiff parole because of the falsified chrono amounts to a "naked assertion."

2    Twombly, 550 U.S. at 557.  Absent "further factual enhancement," Iqbal, 556 U.S. at 678

3    (citation omitted), one cannot plausibly infer that the board based its decision to deny Birrell

4    parole on the chrono, see id. ("A claim has facial plausibility when the plaintiff pleads factual

5    content that allows the court to draw the reasonable inference that the defendant is liable for the

6    misconduct alleged.").  Moreover, this allegation is inconsistent with California law, under which

7    "the presence of a disciplinary infraction does not compel the denial of parole, nor does an

8    absence of an infraction compel the grant of parole" due to the board's obligation to consider

9    "[a]ll relevant, reliable information."  Nettles v. Grounds, 830 F.3d 922, 935 (9th Cir. 2016)

10   (alteration in original) (citation omitted), cert. denied, No. 16-6556, 2017 WL 69407 (U.S. Jan. 9,

11   2017).

12       The allegation that the chrono will be used to deny her future parole hearings is likewise

13   incompatible with California law.  Nettles, 830 F.3d at 935 ("[S]ince the decision to grant an

14   earlier release date on the basis of new information is placed in the discretion of the parole board,

15   Cal. Penal Code § 3041.5(d)(1), success on [the inmate's] claim would not even necessarily lead

16   to an earlier parole hearing.").  Birrell suggests that the parole board relied heavily on the falsified

17   chrono in denying her parole and that it would have reached a different decision had the district

18   attorney introduced no such information.  But the Supreme Court has rejected substantially the

19   same argument.  See Sandin, 515 U.S. at 487 (rejecting inmate's due process claim, partly

20   because "[t]he chance that a finding of misconduct will alter the balance [of factors] is simply too

21   attenuated" in light of the "myriad of considerations" that parole board must consider).

22   Accordingly, Birrell has failed to state a cognizable due process claim.

23       The undersigned recommends the dismissal of this claim with prejudice.  The claim is

24   facially implausible and there is no factual or legal basis to infer that supplemental allegations

25   would salvage it.  See Jordan v. Edwards, No. CV 15-3125 DOC (FFM), 2016 WL 2753389, at

26   *4 (C.D. Cal. Apr. 18, 2016) ("[I]f it is absolutely clear that the deficiencies of the complaint

27   cannot be cured by amendment, a pro se complaint may be dismissed without leave to amend."

28   (citing Karim–Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); Swartz v. KPMG

1   LLP, 476 F.3d 756, 761 (9th Cir. 2007), <u>report and recommendation adopted</u>, No. CV 15-3125

2   DOC (FFM), 2016 WL 2743457 (C.D. Cal. May 10, 2016).

3                          2.      <u>Defamation</u>

4          "Under California law, '[l]ibel is a false and unprivileged publication by writing . . . which

5   exposes any person to hatred,  contempt, ridicule, or obloquy, or which causes him to be shunned

6   or avoided, or which has a tendency to injure him in his occupation.'" <u>Masson v. New Yorker</u>

7   <u>Magazine, Inc.</u>, 501 U.S. 496, 509–10 (1991) (quoting Cal. Civ. Code Ann. § 45). "'The *sine qua*

8   *non* of recovery for defamation . . . is the existence of a falsehood.'" <u>Baker v. L.A. Herald</u>

9   <u>Exam'r</u>, 42 Cal. 3d 254, 259 (1986) (quoting <u>Letter Carriers v. Austin</u>, 418 U.S. 264, 283 (1974)).

10         Here, Bravo argues that Birrell's defamation claim fails because she failed to plead that

11  the contents of the group appeal were false or taken out of context.  However, Birrell bases her

12  defamation claim on the allegedly false chrono.  (<u>See, e.g.</u>, Sec. Am. Compl. ¶ 67, at 27 (alleging

13  that the chrono "was a false . . . document containing a concocted, false allegation that . . .

14  [Birrell] . . . made a 'veiled' threat" to the facilitator) (ECF No. 14).)  Furthermore, construing the

15  second amended complaint favorably, Birrell's allegations support a plausible inference that

16  Bravo participated in the falsification of the chrono.  (<u>See id.</u> ¶¶ 72, 82–83, at 29, 32.)

17         Bravo does not contest the defamation claim on any other ground.  Accordingly, Birrell

18  has pleaded a cognizable defamation claim.

19         **C.     Motion for Sanctions**

20          "A motion for sanctions must be made separately from any other motion and must

21  describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).  "The

22  motion must be served under Rule 5, but it must not be filed or be presented to the court if the

23  challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

24  within 21 days after service or within another time the court sets." <u>Id.</u>  The Ninth Circuit has

25  construed these provisions to mean that, "[w]hen Rule 11 sanctions are initiated by motion of a

26  party, that motion must be separate from other motions or requests and must describe the specific

27  conduct alleged to violate Rule 11(b)." <u>Holgate v. Baldwin</u>, 425 F.3d 671, 677 (9th Cir. 2005)

28  (citation omitted).

1  "In addition, [Rule 11's] safe harbor provision requires parties filing such motions to give the

2  opposing party 21 days first to withdraw or otherwise correct the offending paper."  Id. at 678

3  (citation omitted).  The Ninth Circuit "enforce[s] this safe harbor provision strictly."  Id. (citation

4  omitted).

5        In this case, Birrell did not comply with Rule 11's safe harbor provision.  Instead of

6  serving her motion on Bravo and giving him twenty-one days to withdraw or correct the motion

7  to dismiss, Birrell filed her motion for sanctions contemporaneously with her opposition to the

8  motion to dismiss.  The undersigned is aware of no authority for the extraordinary proposition

9  that, after filing a motion for sanctions without the required notice, movants can cure the failure

10  simply by notifying nonmovants that they want them to withdraw or correct the supposedly

11  offending paper.  Moreover, Rule 11 sanctions would not be appropriate even had Birrell

12  complied with the safe harbor provision.  Although Bravo misunderstood some of Birrell's

13  allegations and arguments, the record does not reflect that his motion to dismiss is "*both* baseless

14  *and* made without a reasonable and competent inquiry."  Holgate, 425 F.3d at 676 (citation

15  omitted).  Accordingly, Birrell's motion for sanctions lacks merit.

16  **IV.  CONCLUSION**

17        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

18        1.  Bravo's motion to dismiss (ECF No. 28) be granted in part and denied in part, with

19  the result that Birrell's due process claim be dismissed with prejudice; and

20        2.  Birrell's motion for sanctions (ECF No. 36) be denied.

21        These findings and recommendations will be submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  The document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

26  objections shall be filed and served within seven days after service of the objections.

27  ////

28  ////

1   The parties are advised that failure to file objections within the specified time may result in

2   waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th

3   Cir. 1991).

4   Dated:  March 2, 2017

5

6   _____

7   DEBORAH BARNES
    UNITED STATES MAGISTRATE JUDGE

8

9

10

11  DLB:11
    DLB1/prisoner-civil rights/birr1204.mtd fr

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28